Bank v. Lynn Energy. Thank you, Mr. Chief Justice, and may it please the Court. My name is Alexander Birch, and I represent Appellant UMB Bank, serving as the administrative agent for approximately 40 bank lenders, known collectively in this bankruptcy proceeding as the Lynn Lenders. Before this bankruptcy, the Lynn Lenders provided the debtor, Lynn Energy, and its affiliates nearly $2 billion to fund its operations. Those negotiated loans were secured by the debtor's oil and gas assets. At issue here in this bankruptcy proceeding is whether the Lynn Lenders allowed fully secured claims include a claim for post-petition interest at 2% plus the base rate, which in shorthand we refer to as default interest. Reversal of the lower court's decisions by this court is required for three reasons. First, Article 3B3 expressly allows as a fully secured claim under Section 506B of the Bankruptcy 2% plus the base rate, notwithstanding any other provision of this plan to the contrary and not subject to offset, avoidance, or disallowance for any reason. Second, independently, the confirmation order also allows the Lynn Lenders claim for default interest by allowing all of the unliquidated claims set forth in the proofs of claim filed by the Lynn Administrative Agent. And third, Article 6F, relied on by the appellees in the lower court, does not apply to prevent the Lynn Lenders from receiving their allowed secured claim for default interest. It seems like, tell me where I'm wrong, but it seems like your argument in a nutshell is that the plan and the confirmation order basically bootstrap in the proof of claim and so your rights are, what you seek is to have simply the rights that were set forth in the proof of claim. That's exactly right. The plan and the confirmation order do bootstrap in and incorporate the proofs of claim, specifically with respect to the definition in the plan that controls, and that is the definition of Lynn Lender claims. I've given the court a handout which, for ease of reference, has the relevant provisions. The first three tabs are those provisions that are actually in the plan or incorporated in the plan, tab one being the proof of claim. So you're completely unimpaired by the bankruptcy court proceedings? I mean, your proof of claim is, includes all of, I assume, would include all of what you believe is due. Judge Englehart, that's a great question. We're not unimpaired. All of our claims are unimpaired claims. But some of those claims get thrown into different terms, into the exit facility, loan agreements. So we're not receiving all cash and everything we're entitled to. We've got different terms, different obligations coming out of the bankruptcy that affect our pre-bankruptcy position. So we are impaired claims. The bankruptcy plan itself says we are impaired claims and there's no dispute among the parties whether or not the Lynn filed by the debtor says we are impaired claims. So, I mean, that is not an issue, at least, that has been raised by any party. And the bankruptcy plan itself shows that, through the exit facility documents, that we are actually impaired claims. Okay. The place to begin this court's analysis is with Article 3B3 of the plan. The reason we know this is because it begins with the notwithstanding clause, which is a superordinating clause, and that clause states notwithstanding any other provision of this plan to the contrary. In Cisneros, the Supreme Court stated that the provisions of the notwithstanding section override conflicting provisions of any other section. The Fifth Circuit, on at least four occasions, has cited to Cisneros for this direct proposition. And I'm sure, as the panel knows, at least two of those decisions were joined by members of the panel. And I'd be missed if I didn't actually bring those up to the court. The first being Gavon Group v. Dyer, 2009, per curiam decision involving a notwithstanding in a loan agreement. The case site is 337, Fed Appendix 436. That was a per curiam opinion joined by Chief Judge Stewart. The second being U.S. v. Elashi, a 2015 decision joined by Judge Southwick involving a notwithstanding clause in a statute. In both cases, the notwithstanding clause was the deciding factor as to why that provision prevailed. The citation to U.S. v. Elashi is 789, F3D, 547. Now, in this case, the notwithstanding clause in 3B3 is important to the Court's analysis and cannot be idly set aside, as appellees argue, because it informs the reader and this Court where to begin and, quite frankly, end its analysis. After all, if any other notwithstanding clause guarantees that 3B3 is supreme over that provision, it overrides it. And if there is no conflict in the plan, then everything else in the plan must, at a minimum, be consistent with Article 3B3. So if the Court reads Article 3B3 as it must to include a claim for post-petition interest at the default rate of 2% plus the base rate, the Court's analysis ends. Well, Counsel, one reason, obviously, it wasn't read that way before is that it doesn't just say notwithstanding any other provision. To the contrary, the LEND-LENDER claims are to be paid in full. There's more language in there, and the language relied upon, perhaps most strongly by the bankruptcy judge, was it had mentioned default interest, and you talked about what Judge Engelhardt references to LEND-LENDER claims, the credit agreement and whatever documents. It seems to me your argument at times is that this provision means that everything in the LEND-CREDIT agreement is to be paid in full on the terms provided in that agreement. And I don't think that's what the bankruptcy plan allowed, did it? I mean, is everything, I mean, you were having that exchange with Judge Engelhardt. It's not just that there were impaired claims. There were other restrictions or limitations on what you were to receive, correct? That's correct. So it seems to me that it's, you know, why isn't it a reasonable interpretation of this provision, 3B, et cetera, that when it lists $1.93 billion on account of unpaid principal plus unpaid interest fees and other expenses, that that is not just a sloppy way to list it. That was an intentional way to list what interest was to be paid. Is there anything in this agreement that would explicitly say that unpaid interest, not in this provision but elsewhere, includes all forms of interest? I mean, it's a distinction elsewhere between default interest and just interest running on the principal. Right. And, Your Honor, I think I can answer that in two separate ways. I said so many things. You figure out where the question was. Right. I'll see if I can unpack that, Your Honor. With respect to unpaid interest, as you noted, there's no express limitation as to what interest applies. All it says is unpaid interest. Well, is it prepetition interest? Is it postpetition interest? There's no limitation in Article 3B3 itself. And certainly the debtor knew how to make that limitation had it intended to do so. You look at the Class A3 lenders or the, excuse me, the Class A4 lenders that follow. It says unpaid interest. And then in a parenthetical it states what the interest is, 12 percent times the principal. It didn't do that with respect to Article 3B3. And I think the reason why this Court need not concern itself with that is because the Linn Lender claims are allowed as fully secured claims under Section 506B of the Bankruptcy Code. That in and of itself tells the Court where to find the interest rate. This Court has construed Section 506B of the Bankruptcy Code under Southland to state to find out what interest is required under 506B. You look to the party's prepetition loan documents. And here it includes default interest. Indeed, Southland offers a presumption that default interest is allowed for oversecured creditors such as the Linn Lenders in this case. So to find that the unpaid interest in Article 3B3 somehow does not include default interest would contradict the Southland decision from the Fifth Circuit. Not setting aside it would contradict the Cisneros opinion from the Supreme Court regarding the efficacy of a notwithstanding clause. Given the clarity of the notwithstanding clause as reinforced by the Supreme Court, the undeniable allowance of default rate interest in 3B3, and the fact that such claim is not subject to offset, disallowance, or avoidance for any reason, the Linn Lenders were assured when reading this provision, and this provision never changed from the very first draft of the plan attached to the disclosure statement in October 2016, I think some four months before plan confirmation. The language never changed. Well, you may have been assured. They should have been somewhat concerned when they read 6F that also has that word you like in it. And it said what we will ignore are documents that govern the Linn debtors' prepetition funded indebtedness. Now your reply brief says to that, seems to me a couple of things. One is that 3B controls over that. And I said a couple of things. I'm going to come up with one right now. But it does seem to me it's a perfectly legitimate way to read the two together in the way that your opponents are reading this and the way that the bankruptcy judge did. So why is it that when you have just a single word interest, not default or whatever else, you say without limitation, regardless, the single word interest in 3, and then in 6, you see that notwithstanding anything else in here, we're not going to allow the payment of default interest as set out in these prepetition documents. It seems to me that's a pretty red flag that ought to give at least some concern to your client. Well, there's no concern whatsoever, Judge Southwick, and here's why. With respect to Article 6F, it begins with unless otherwise specified in the plan. The only other place in the plan that could refer to would be the Class A3 Linn lenders. To read it any other way would be to simply read out the unless otherwise specified in the plan language of Article 6F. Second, Your Honor. Well, there is the word specified, and of course you're saying it is specified. And it's absolutely specified in Article 3B3. There's no way around that. The definition of Linn lender claims... The bankruptcy judge found a way around it. There's no legitimate way around it? You're right. There is no legitimate way around it, Your Honor. There's no correct way around it, which is why we're here before, Your Honor, in the panel. So Article 6F is no impediment at all to the default interest claim. Now remind me, when did this issue first come up in this whole calendar of negotiation and execution of this? Great point, Your Honor. Of non-default. It did not come up until after the confirmation order and before the effective date of the plan when... After the confirmation order. That's correct, Your Honor. There was no need for the Linn lenders to actually raise the issue because the very first draft of the plan says you get all of your claims as set forth in your proof of claim, and in tab 1, the proof of claim says you get default interest at 2% plus the base rate. There's no need for the Linn lenders to raise the issue. We filed it in our proof of claim. That was not objected to. So why raise a red flag when all of your claims as set forth in the proof of claim are going to be allowed in this plan? The opinions below create unnecessary confusion about the obligations of creditors, secured creditors and debtors in Chapter 11 bankruptcy. It also unnecessarily strains any reliance on a debtor's proposed claim treatment provision as well as the plain language agreed to by contracting parties in general. In other words, the plan must mean what it says, and in this plan, notwithstanding anything to the contrary, the Linn lenders get their default interest claim as a fully secured claim. To find anything else would be to find that the Linn lenders' claims are something less than fully secured in contravention of the actual plain language of this plan and the facts of this case. To find that 6F controls, despite 3B3's notwithstanding clause, is to contradict Supreme Court law and the law of this circuit with respect to how or the efficacy of these notwithstanding provisions. Reversal is required to enforce the plan as written and the parties' pre- and post-petition expectations. And only reversal can remedy the conflict and confusion of the law that the lower court decisions in this case have caused. I'm about to run out of my time. I will reserve the rest for rebuttal unless the Court has any other questions. Let me ask, is there anything going on in the case involving Berry that has application here that if we resolve something a certain way will affect that case, or is that over? That case is over. There was no appeal pending for that case. When UMB substituted in for Wells Fargo on the day the notice of appeal was due, UMB, this is all outside the record, but UMB didn't have standing to actually represent Berry. The same arguments would apply. You have the same notwithstanding, virtually the same languages. There's an additional provision that I know the other side relies on in 6F for that plan. That's good enough. Thank you. Thank you. All right. Thank you, sir. You've reserved your rebuttal time. Thank you. All right. We'll hear from Ms. Murphy. Good morning, Your Honors, and may it please the Court. Erin Murphy on behalf of the appellees. The Bankruptcy Court correctly rejected the LEND Lender's 11th hour request for $31 million in default interest. Article 6F of the LEND Bankruptcy Plan squarely precludes any creditor from recovering default interest unless either the plan itself or the confirmation order specifically provides otherwise. Neither the plan nor the confirmation order here says one word about the LEND Lender's recovering default interest. Instead, they rely only on extrinsic documents, which is precisely what 6F says they could not do. They alternatively argue that Article 6F doesn't apply to them because Article 3B.3 contains this notwithstanding clause. But it's clear as a matter of New York law, which everyone agrees governs here, that a notwithstanding clause does not supersede everything in a contract. It only supersedes those provisions with which there's an actual conflict. Now, here there were provisions that were actual conflicts between Article 3B.3 and those provisions, and as to those, the notwithstanding clause would tell you that Article 3B.3 trumps. But 6F simply wasn't one of those provisions because there is no actual conflict here. Counsel, where would we be, where would you be, if there wasn't this language in Article 6, if all we had was 3B, etc.? It seems to me part of your argument is relying on the fact that it doesn't refer to default interest in 3, but it does refer to interest. I'm trying to get whether this is clear freestanding in your mind or whether we need 6 to create not so much a conflict, but a context to understand 3B. So respond, if there's a question there, respond to that. Sure. Sure. So, you know, I do think if we didn't have 6F, we would still be arguing that they could not get default interest here because it is just, it's not clearly set forth in their proof of claim in the way they suggest. I don't know enough about default interest. Why is it when the word just says unpaid, but the word just interest is freestanding, it certainly seems arguable that would include all forms of interest that would arise as an obligation between the debtor and the creditor. Why would default interest need to be specifically referenced? Sure. I think, you know, we reference a footnote in our brief in this issue. We ultimately don't think you need to kind of go down this path, but there's a bankruptcy court case called Jack Klein that discusses how default interest is distinct, and if you want default interest, you should be providing a kind of a specific separate request for default interest. So we would take the position, if we didn't have 6F, that there was still a problem with just kind of vaguely referencing default interest in a proof of claim rather than making a separate request that says, in addition to, you know, what we're actually due on our principal and all of that, we also want this default interest on top of it. But ultimately, you know. It's not just a vague reference. It does then refer to the Lend Credit Agreement and whatever else the following references are. So that's, there was default interest clearly set out in the Lend Credit Agreement. It certainly is in the Lend Credit Agreement. But, you know, here, I do think you have to look at the whole context of what is actually being claimed, what they're asking for, and what the plan then allows. And we would submit, you know, even without 6F, that we don't think it's clear enough that they were requesting the default interest, particularly when you put this in the context of the cash collateral order at the outset of the proceeding that had said, you know, unless you specifically, separately claim this, you're not going to get default interest. But, you know, all of that said, I mean, I don't think it would make a whole lot of sense to completely ignore the fact that there is a 6F in this plan, because 6F specifically speaks to the issue of default interest. It's very clear. I wasn't suggesting. Yeah. But, you know, I do think that it is, it is the controlling provision on all of this for purposes of this plan. And as my friends on the other side point to the fact that, you know, in the absence of something in the plan that speaks to it, yes, you'd have a 506B question of whether you get default interest. But it's very clear under Chapter 11 that the plan can contract around what is in the statute and the code itself. And here, the plan itself spoke specifically to default interest and said, you don't get it unless there's a provision that says so. I mean, 6F has its own notwithstanding. It does. So you argue that the notwithstanding in 6F vitiates the notwithstanding in 3B3. In other words, said, maybe better, the plan says what it says, but it says unless otherwise specifically provided. So you argue that language about specifically provided coupled with the notwithstanding vitiates the incorporation by reference analysis. Exactly. 6F, I mean, it essentially creates for the plan a default rule that to the extent the plan is referencing things like underlining claim agreements, et cetera, that's not good enough, the plan itself would need to specifically say that you are getting default interest. And I don't think anybody really disputes that as to any of the other creditors that were at issue in this plan. I mean, there are other creditors here who had underlying loan documents under which they could have gotten default interest, but 6F precluded them from being able to assert that even though their own definitional provisions in the plan refer to their claims, refer to the claims as set forth in their underlying loan documentation. So contrary to what my friends on the other side are saying, they're not the only lenders in this case that had their underlying loan documents or proofs of claim referenced in the plan. Those kind of documents are referenced all over the place in the plan, and 6F creates essentially this rule of construction, this rule of how it's going to operate for all of the creditors, which is that's not good enough, it needs to be the plan itself or the confirmation order that refers to default interest. And here, all you have is that generic reference to unpaid interest in the plan. You can see that same term in other class of creditors. You know, if you just look at the very next provisions on the very next page of the plan, the class 4 creditors, the class 5 creditors, it says that they were getting their claims as allowed in the amount of principal and unpaid interest. And nobody thinks that that meant they were getting default interest just because the plan generically said unpaid interest, even though if you looked at the class 5 creditors' loan documents, you would see that their unpaid interest did include default interest. 6F precluded that. So I really do think, you know, that all of this ultimately turns on their argument that this notwithstanding clause in 3B3 kind of trumps the whole thing and throws everything out the window in the whole rest of the plan. Let me ask you about something you said two sentences ago. I didn't want to jump right in. You said there were other creditors with default interest. I may not be remembering your brief, but I thought one of the briefs says that it was likely some of the others had default interest. Are you assuring us, I don't mean to overstate that, but you are certain that some of the others would have had default interest in their claims? My understanding is that the class 5 creditors that were covered by 3B5 had default interest in their underlying loan documents as well. And so, you know, they were not the only creditors here who had default interest in their underlying loan documents. So that's why you needed a rule of thumb that was going to apply to all of the documents here because there were multiple documents with default interest issues in them. I looked at your citation. I'd forgotten your footnote. I probably forgot some other things, too. You were signing a bankruptcy court for that proposition. I don't know how good of the authority was there. It does seem to me it's a fair point, but I don't know if it's a well-settled point that you need to identify default interest as separate. Is that your main authority, the Jack Klein? Is that the right name case? The Jack Klein case is the case that established essentially, you know, the bankruptcy court there said that you would need to separately claim it. The bankruptcy court here didn't adopt that rule. The court said, I don't think I need to adopt a bright-line rule for purposes of resolving this case. But we do think it would certainly be open to this court to resolve the case by saying that the proof of claim wasn't good enough even if they incorporated it. But that, you know, our principal argument here is you really don't need to get there because 6F tells you that it needs to be the plan itself or the confirmation order that says something about default interest. And as we pointed out, the plan doesn't say anything about default interest. To answer the question you asked earlier, there's nothing in the plan that defines the term unpaid interest to include default interest or any other type of interest. So, you know, if anything, the fact that 6F very clearly uses all of these different terms would be inconsistent with reading the generic term interest to include every type of interest that 6F said needed to be dealt with specifically and separately. Are you not the only pair of litigants who have appeared in front of panels in Fifth Circuit who say a document is absolutely clear, but you have opposite meanings that you give to the clear document? Right. If it's ambiguous, what else could you tell us? Sure. I think that if there were ambiguity in the plan here, I mean, I think one of the first places that you would look to understand the context here is the disclosure statements, which did not include default interest. The bankruptcy court explained in its opinion that it did not understand the disclosure statements to include default interest. When it confirmed the plan, it did not understand itself to be confirming a plan that included default interest. And I think it is notable here that when they asserted four days for the first time ever before Lynn was about to emerge from bankruptcy that they believed they were entitled to another $31 million, it wasn't just Lynn that responded by objecting to that. I mean, the creditors who had approved the plan responded by saying, what are you talking about? We approved this plan and there was nothing that we understood in the plan or the disclosure statements to ever indicate that you were getting this. And ultimately that's what the bankruptcy court itself ended up finding, which is that it did not understand there to be default interest included here. So I think all of that is enough to get you there even before you would go to kind of the deposition testimony and the other things indicating that they basically conceived that they never raised this with anybody until well after the plan and the disclosure statements and all of these documents were out there leaving everybody with the understanding that there was no default interest owed to them under this plan. So I think that, you know, all of that points in the same direction that we believe the contract language points here as well, which is that the controlling provision on default interest here was 6F, not 3B3, which doesn't say anything about amounts to blowing uphill against Cisneros, and there were a couple of other cases there that he cited. What do you say? Sure. And if I could talk for a moment about this principle about how to interpret notwithstanding clauses. The case law is very clear, and particularly I would refer you to the Beardsley case that we cite in our brief from the New York Court of Appeals. This is, after all, a contract that is governed by New York law, and that case very clearly explains that a notwithstanding clause does not mean that that provision supersedes everything else in the contract. It means it supersedes things as to which there is an actual conflict. And I could just give you an example of something that I think is illustrative of how I think this principle would work in practice. I mean, imagine you had a plan that said creditors can recover in a certain amount as long as they complied with 10 requirements, and the 10th requirement was that they had to file a proof of claim by March 1st. And then imagine you had another provision in that plan that said, notwithstanding anything else in this plan to the contrary, creditor class A can recover as long as they file by March 15th. Now, at some high level of generality, you could say that requiring those class A creditors to do anything other than file a proof of claim by March 15th would be inconsistent with that provision in the notwithstanding clause. But I don't think any court would read that contract to actually mean that all of the nine requirements in it that had absolutely nothing to do with the filing date were somehow now thrown out the window, and the whole thing was governed by the fact that they had a different date for filing a proof of claim. That's because what matters is whether you have an actual conflict that the notwithstanding clause needs to resolve. It's not a clause that tells you you don't need to look at anything else in the plan. Now here, there were some provisions in the plan where there were actual conflicts. So if you look, for instance, at Article 7i of the plan, that provision says that as a general matter, all of the claims in the plan are subject to disallowance under certain provisions of Chapter 5 of the Bankruptcy Code. If you look at Article 3b3, it specifically says that the Linn Lender claims are not subject to disallowance under Chapter 5 of the Bankruptcy Code. There you have a clear conflict. The notwithstanding clause would kick in and would tell you that Article 3b3 governs. You can see this also as to set-off. There's a provision 6g that generally says that claims are subject to set-off, whereas Article 3b3 says the Linn Lender claims are not subject to set-off. So there were conflicts here that were, you would look at the plan, would understand that those were conflicts, would say, I see, there's a notwithstanding clause. It tells me that that conflict gets resolved in favor of the Linn Lenders. The problem with their argument is there's just no conflict of that nature with respect to this issue of default interest. Nobody would look at 3b3 and understand it to be specifically saying that they're getting this kind of default interest in a way that by the fact that when they said they thought they were entitled to this, everybody else said, what are you talking about? So I think that is all very consistent with this notion behind notwithstanding clauses that they aren't kind of creating a provision that rises above everything else in the plan. They're creating a rule of construction that tells you to the extent necessary, this clause tells you this provision trumps. And I would particularly note, my friends on the other side really like to refer to the Scalia-Garner statutory construction book on this. If you haven't had a chance, I'd encourage you to go take a look at that provision because what it actually says is that a notwithstanding clause applies merely to resolve conflict and says you shouldn't go digging around for conflict that doesn't exist just because a statute has a notwithstanding clause. So I don't think the notwithstanding clause here really gets them where they want to go. 6F continues to govern as to them the same way that it did as to all of the other creditors in this claim. And they simply aren't entitled to this essentially windfall of default interest on top of the nearly $2 billion that they already got under this plan. Unless the court has any other questions, I'm happy to back to you for rebuttal. A couple of brief points in rebuttal. Number one, there's simply no way to read Article 3B.3 as not allowing default interest. The reference to Section 3B, the definition of Linn Lender claims, which is tab 3 to this court's oral argument handout, shows the Linn Lender claims are allowed as set forth in the proofs of claim. Tab 1 is the proof of claim language that is at issue and highlighted for the court is additional interest continues to accrue at the post default rate of 2% plus otherwise applicable rate. That's the default interest we're talking about. That's the interest that is incorporated into Article 3B.3. If anything else in the plan provides otherwise, it by definition is a conflict. So what does Section 6F do? It applies to every other Linn Lender claims. It has effect. It accepts itself from at least one, at least something in the plan. If you read 6F, you're on notice. Hey, look elsewhere. There might be something specifically in the plan that provides otherwise. To give that phrase any meaning, you would have to enforce 3B.3 as allowing default interest. And I want to address this notion that they made a claim of waiver, that this was raised late, that somehow we had an obligation to do more than what we did in this case. That's simply not true. The facts don't show that. Within 48 hours of the initial filing of the petition, the interim cash collateral order expressly reserves our right, our being the Linn Lender's right, to assert their claims for default interest. That again was reinforced in the final cash collateral order. We then filed a proof of claim, timely filed a proof of claim, including what is in Tab 1, the claim for default interest. Then the plan as originally drafted, and I know counsel here said that nothing in the disclosure statement references default interest. That's simply not true because the draft plan attached to the disclosure statement had the exact same language we're talking about, the reference to 506B of the Bankruptcy Code. More than that, it incorporated all claims set forth in the proof of claim for 3B.3. No other creditor class has that type of provision. No other creditor class incorporates all claims set forth in a proof of claim. No other creditor class. No other provision. Like Class A3 Linn Lenders. That has to have some meaning. These aren't boilerplate. And even if it were boilerplate, the notwithstanding clause in 3B.3, it still must be enforced. Even if somehow you find that 6F is more specific, it directly addresses default interest. And the provisions in 3B.3 are so general, it's so difficult for you to actually find default interest. If there's any way to find default interest in 3B.3 and 6F precludes it, you have the conflict notwithstanding clause resolves it. There can be no ambiguity in this case, either through 6F, which says unless otherwise specified in the plan, or through 3B.3, which says notwithstanding anything to the contrary. So any ambiguity that would be created is resolved by these other notwithstanding or the subordinating clause unless otherwise provided in the plan. Counsel also addressed the word specifically, the adverb, in unless otherwise specifically stated in the plan in 6F. There's no case that I've been able to find and I've looked that says that specifically, use of the word specifically negates the incorporation by reference doctrine. Simply not the case. More than that, it says specifically in the plan. An incorporation by reference that the whole doctrine is intended to incorporate something into that document. It's part of it. So the proofs of claim for the Linn lenders are in the plan. That language is in the plan. The debtor could have drafted another plan. It didn't have to say all of the claims are incorporated by reference. It did so in this case. Thank you, Your Honors. All right. Thank you. Thank you, Counsel, for the briefing and argument in the case. The case will be submitted along with the non-orally argued cases that the panel has today. That concludes our oral argument session for this morning. The panel will be in recess until 8 o'clock.